John J. Kolego, P.C., OSB# 85057
804 Pearl Street
Eugene, OR 97401
Phone: (541) 484-1066
Attorney for Suzanne Savoie

FILED'06 SEP 08 15:01USDC-ORE

FILED'06 JUL 21 17:10USDC-ORE



# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR06-60080-AA |
| Plaintiff, | ) ) | |
| vs. | ) ) | PETITION TO ENTER PLEA OF GUILTY, CERTIFICATE OF COUNSEL, AND ORDER ENTERING PLEA. |
| SUZANNE SAVOIE, | ) ) | |
| Defendant. | ) ) | |

The defendant represents to the court:

1.      My name is Suzanne Savoie. I am ___29___ years old. I have gone to school up to and including the ___16th___ grade.

2.      My attorney is John J. Kolego.

3.      My attorney and I have discussed my case fully. I have received a copy of the Indictment or Information. I have read the Indictment or Information, or it has been read to me, and I have discussed it with my attorney. My attorney has counseled and advised me concerning the nature of each charge, any lesser-included offense(s), and the possible defenses that I might have in this case. I have been advised and understand that the elements of the

**Page 1**

charge(s) alleged against me to which I am pleading "GUILTY" are as follows: **Count 1** (1) Beginning in October 1996 and continuing through ~~December~~ October 2001, that I, in the District of Oregon and elsewhere (2) did willfully and knowingly conspire (3) to maliciously damage or destroy, or attempt to damage or destroy, by means of fire, buildings, vehicles, and other personal and real property owned in whole or in part or possessed by, or leased to, the United States or any department or agency thereof, and or used in interstate commerce or in any activity affecting interstate commerce and to knowingly and willfully damage and attempt to damage the property of an energy facility of the United States involved in the transmission of electricity, as set forth in Attachment 1 attached hereto; **Count 2** (1) On or about January 2, 2001, at, that I, at Glendale, Douglas County, in the District of Oregon (2) did unlawfully and willfully (3) caused and aided, abetted, counseled, commanded, induced, and procured the malicious damaging and destroying, by means of fire and explosive, of a building and other real and personal property used in interstate commerce and used in activities affecting interstate commerce, namely, a building and its contents located at Superior Lumber Company, 2695 Glendale Valley Road, Glendale, Douglas County, Oregon, as set forth in Attachment 1 attached hereto; **Count 3** (1) On or about May 21, 2001, at Clatskanie, Columbia County, that I, in the District of Oregon, (2) unlawfully and willfully (3)caused and aided, abetted, counseled, commanded, induced, and procured the attempt to damage or destroy, by means of fire and an explosive, a building and other real and personal property used in interstate commerce and used in activities affecting interstate commerce, namely, the main office building and its contents located at Jefferson Poplar Farm, 79114 Collins Road, Clatskanie, Columbia County; **Count 4** (1) On or about May 21, 2001, at Clatskanie, Columbia County, that I, in the District of Oregon, (2) unlawfully

and willfully (3) caused and aided, abetted, counseled, commanded, induced, and procured the malicious damaging and destroying, by means of fire and an explosive, of a building and other real and personal property used in interstate commerce and used in activities affecting interstate commerce, namely, a vehicle shop and its contents located at Jefferson Poplar Farm, 79114 Collins Road, Clatskanie, Columbia County, Oregon.

4. I know that if I plead "GUILTY," I will have to answer any questions that the judge asks me about the offense(s) to which I am pleading guilty. I also know that if I answer falsely, under oath, and in the presence of my attorney, my answers could be used against me in a prosecution for perjury or false statement.

5. I am not under the influence of alcohol or drugs. I am not suffering from any injury, illness or disability affecting my thinking or my ability to reason except as follows:

_____ . I have not taken

any drugs or medications within the past seven (7) days except as follows: None.

6. I understand that conviction of a crime can result in consequences in addition to imprisonment. Such consequences include deportation, or removal from the United States, or denial of naturalization, if I am not a United States citizen; loss of eligibility to receive federal benefits; loss of certain civil rights (which may be temporary or permanent depending on applicable state or federal law), such as the right to vote, to hold public office, and to possess a firearm; and loss of the privilege to engage in certain occupations licensed by the state or federal government.

J.D.K   S.S.

COUNT 5 ON OR ABOUT MAY 21, 2001, AT CLATSKANIE, COLUMBIA COUNTY OREGON, THAT I, IN THE DISTRICT OF OREGON UNLAWFULLY, WILLFULLY AIDED ABETTED, COUNSELED COMMANDED INDUCED AND PROCURED THE MALICIOUS DAMAGING AND DESTROYING, BY MEANS OF FIRE AND AN EXPLOSIVE OF A BUILDING AND OTHER REAL AND PERSONAL PROPERTY USED IN INTERSTATE COMMERCE AND USED IN ACTIVITES AFFECTING INTERSTATE COMMERCE, NAMELY A SHOP AND OFFICE AND ITS CONTENTS LOCATED AT JEFFERSON POPLAR FARM, 79114 COLLINS ROAD, CLATSKANIE, OREGON.

COUNTS 6 THROUGH 15 - SEE ATTACHMENT.

Page 3

ATTACHMENT:   J.J.K.   S.S.

COUNTS 6 THROUGH 15 : ON OR ABOUT MAY 21, 2001 AT
CLATSKANIE, COLUMBIA COUNTY OREGON, DISTRICT OF OREGON, THAT
I UNLAWFULLY, WILLFULLY AIDED AND ABETTED, COUNSELED, COMMANDED,
INDUCED, AND PROCURED THE MALICIOUS DAMAGING AND DESTROYING
BY MEANS OF FIRE AND AN EXPLOSIVE, OF TEN (10) VEHICLES
USED IN INTERSTATE COMMERCE AND USED IN ACTIVITIES
AFFECTING INTERSTATE COMMERCE LOCATED AT JEFFERSON
POPLAR FARMS, 79114 COLLINS ROAD, CLATSKANIE, COLUMBIA
COUNTY, OREGON.

7.     I know that I may plead "NOT GUILTY" to any crime charged against me and that I may persist in that plea if it has already been made. I know that if I plead "NOT GUILTY" the Constitution guarantees me:

> a.     The right to a speedy and public trial by jury, during which I will be presumed to be innocent unless and until I am proven guilty by the government beyond a reasonable doubt and by the unanimous vote of twelve jurors;
>
> b.     The right to have the assistance of an attorney at all stages of the proceedings;
>
> c.     The right to use the power and process of the court to compel the production of evidence, including the attendance of witnesses in my favor;
>
> d.     The right to see, hear, confront, and cross-examine all witnesses called to testify against me;
>
> e.     The right to decide for myself whether to take the witness stand and testify, and if I decide not to take the witness stand, I understand that no inference of guilt may be drawn from this decision; and
>
> f.     The right not to be compelled to incriminate myself.

8.     I know that if I plead "GUILTY" there will be no trial before either a judge or a jury, and that I will not be able to appeal from the judge's denial of any pretrial motions I may have filed concerning matters or issues not related to the court's jurisdiction [*see* instructions].

9.     In this case I am pleading "GUILTY" under Rule (c) (1)(B).

10.     I know the maximum sentence which can be imposed upon me for the crime(s) to which I am pleading guilty is:

Count 1: maximum sentence is 5 years imprisonment, a fine of $250,000 and a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

Count 2: maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000 and a 2 to 3 year period of supervised release and a mandatory $100 fee assessment

Count 3: maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000 and a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

Count4: maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000 and a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

*D.K. S.S. COUNTS 5 THROUGH 15! MAXIMUM SENTENCE IS 20 YEARS IMPRISONMENT, A MANDATORY MINIMUM OF 5 YEARS, A FINE OF $20,000 AND A 2 TO 3 YEAR PERIOD OF SUPERVISED RELEASE, AND A MANDATORY FEE ASSESSMENT OF $100.*

11.    I know that the judge, in addition to any other penalty, will order a special

assessment as provided by law in the amount of $ 100.00 per count of conviction.

12.    I know that if I am ordered to pay a fine, and I willfully refuse to pay that fine, I can be returned to court, where the amount of the unpaid balance owed on the fine can be substantially increased by the judge and I can be imprisoned for up to one year.

13.    My attorney has discussed with me the Federal Sentencing Guidelines. I know The Guidelines are advisory, not mandatory. I also know the sentencing judge, in determining the particular sentence to be imposed, must consider those factors set forth in Title 18, United States Code, Section 3553(a), including, but not limited to: the nature and circumstances of the offense, my own history and characteristics, the goals of sentencing (punishment, deterrence, protection, and rehabilitation), and the sentencing range established by the advisory Guidelines. If my attorney or any other person has calculated a guideline range for me, I know that this is only advisory, and is only on e of the factors that the judge will consider in making a final decision as to what sentence will be imposed. I also know that a judge may not impose a sentence greater than the maximum sentence referred to in paragraph (10) above.

14.    I know from discussion with my attorney that, under the Federal Sentencing Guidelines, if I am sentenced to prison I am not entitled to parole. I will have to serve the full sentence imposed except for any credit for good behavior that I earn. I can earn credit for good behavior in prison at a rate of up to 54 days for each year of imprisonment served. Credit for good behavior does not apply to a sentence of one year or less.

15.    I know that if I am sentenced to prison, the judge will impose a term of at least 3 years supervised release to follow the prison sentence. During my supervised release term I will be supervised by a probation officer according to terms and conditions set by the judge. If I violate the conditions of supervised release, I may be sent back to prison for up to three years.

16.    I know that in addition to or in lieu of any other penalty, the judge can order restitution payments to any victim of any offense to which I plead guilty. I am also informed that, for certain crimes of violence and crimes involving fraud or deceit, it is mandatory that the judge impose restitution in the full amount of any financial loss or harm caused by an offense. If imposed, the victim can use the order of restitution to obtain a civil judgment lien. A restitution order can be enforced by the United States for up to twenty (20) years from the date of my release from imprisonment, or, if I am not imprisoned, twenty (20) years from the date of the entry of judgment. If I willfully refuse to pay restitution as ordered, a judge may resentence me to any sentence which could originally have been imposed.

17.    On any fine or restitution in an amount of $2,500 or more, I know that I will be required to pay interest unless that fine or restitution is paid within fifteen (15) days from the date of the entry of judgment.

18. If I am on probation, parole, or supervised release in any other state or federal case, I know that by pleading guilty in this court my probation, parole or supervised release may be revoked and I may be required to serve time in that case, which may be consecutive, that is, in addition to any sentence imposed on me in this court.

19. If I have another case pending in any state or federal court, I know that my Petition and Plea Agreement in this case do not, in the absence of an express and written agreement, apply to my other case(s), and that I can be faced with consecutive sentences of imprisonment.

20. My plea of "GUILTY" is based on a Plea Agreement that I have made with the prosecutor. That Plea Agreement is attached hereto and incorporated herein. I have read or had read to me the Plea Agreement, and I understand the Plea Agreement.

21. The Plea Agreement contains the only agreement between the United States government and me. No officer or agent of any branch of government (federal, state or local) or anyone else has promised or suggested that I will receive a lesser term of imprisonment, or probation, or any other form of leniency if I plead "GUILTY" except as stated in the Plea Agreement. I understand that I cannot rely on any promise or suggestion made to me by a government agent or officer which is not stated in writing in the Plea Agreement, or which is not presented to the judge in my presence in open court at the time of the entry of my plea of guilty.

22. My plea of "GUILTY" is not the result of force, threat, or intimidation.

23. I hereby request that the judge accept my plea of "GUILTY" to the following count(s): Count 1, 2, 3 and 4.

24.     I know that the judge must be satisfied that a crime occurred and that I committed that crime before my plea of "GUILTY" can be accepted. With respect to the charge(s) to which I am pleading guilty, I represent that I did the following acts and that the following facts are true:

*S.S. O.K.*
*October 2001*

1.  Beginning in October 1996 and continuing through ~~December 2005~~, in the District of Oregon and elsewhere, I, Suzanne Savoie, and others, willfully and knowingly conspired and agreed to maliciously damage or destroy, or attempt to damage or destroy, by means of fire, buildings vehicles and other personal and real property owned in whole or in part or possessed by, or leased to, the United States or any department or agency thereof, and or used in interstate commerce or in any activity affecting interstate commerce. *and destruction of an energy facility for O.K.*

2.  On or about January 2, 2001, at Glendale, Douglas County, in the District of Oregon, I, Suzanne Savoie, and others, unlawfully and willfully caused and aided, abetted, counseled, commanded, induced, and procured the malicious damaging and destroying, by means of fire and an explosive, of a building and other real and personal property used in interstate commerce and used in activities affecting interstate commerce, namely, a building and its contents located at Superior Lumber Company, 2695 Glendale Valley Road, Glendale, Douglas County, Oregon;

3.  On or about May 21, 2001, at Clatskanie, Columbia County, in the District of Oregon, I, Suzanne Savoie, and others, unlawfully and willfully caused and aided, abetted, counseled, commanded, induced, and procured the attempt to damage or destroy, by means of fire and an explosive, a building and other real and personal property used in interstate commerce and used in activities affecting interstate commerce, namely, the main office building and ~~its~~ *these* contents located at Jefferson Poplar Farm, 79114 Collins Road, Clatskanie, Columbia County, Oregon;

4.  On or about May 21, 2001, at Clatskanie, Columbia County, in the District of Oregon, I, Suzanne Savoie, and others, unlawfully and willfully caused and aided, abetted, counseled, commanded, induced, and procured the malicious damaging and destroying, by means of fire and an explosive, of a building and other real and personal property used in interstate commerce and used in activities affecting interstate commerce, namely, a vehicle shop and ~~its~~ *these* contents located at Jefferson Poplar Farm, 79114 Collins Road, Clatskanie, Columbia County, Oregon; ~~and personal property located therein;~~

*S.S. O.K.*

25.     I offer my plea of "GUILTY" freely and voluntarily and of my own accord and with a full understanding of the allegations set forth in the Indictment or Information, and with

*⟶ SHOP AND OFFICE AND TEN VEHICLES.*

a full understanding of the statements set forth in this Petition and in the Certificate of my attorney that is attached to this Petition.

SIGNED by me in the presence of my attorney, after reading (or having had read to me) all of the foregoing pages and paragraphs of this Petition on this $\underline{21}$ day of July, 2006.

Suzanne Savoie
Defendant

## ORDER ENTERING PLEA

I find that the defendant's plea of GUILTY has been made freely and voluntarily and not out of ignorance, fear, inadvertence, or coercion. I further find the defendant has admitted facts that prove each of the necessary elements of the crime(s) to which the defendant has pled guilty.

IT IS THEREFORE, ORDERED that the defendant's plea of GUILTY be accepted and entered as requested in this Petition and as recommended in the Certificate of defendant's attorney.

DATED this ___ of _____, 2006, in open court.

_____
Judge, U.S. District Court



**U.S. Department of Justice**
*Karin J. Immergut*
*United States Attorney*
*District of Oregon*
*701 High Street*                    *Office (541) 465-6771*
*Eugene, OR 97401 -2798*        *Fax (541) 465-6582*

July 19, 2006


John Kolego
Attorney at Law
804 Pearl Street
Eugene, Oregon 97401

     Re:    United States v. Suzanne Nichole Savoie    Case No. CR 06-60080-1-AA
               Plea Agreement - **REDACTED VERSION**

Dear Mr. Kolego:

1.   **Parties/Scope**:  This plea agreement is between this United States Attorney's Office for the District of Oregon (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority except as otherwise identified in this agreement.   This agreement does not apply to any charges other than those specifically mentioned herein.

2.   **Charges and Penalties**:  Defendant agrees to plead guilty to Counts 1 through 15 of the Information as follows:

   **Count 1: Conspiracy to Commit Arson and Destruction of an Energy Facility of the United States** in violation of Title 18, United States Code, Section 371.  The maximum sentence is 5 years imprisonment, a fine of $250,000, a 2 to 3 year  period of supervised release and a mandatory $100 fee assessment.

   **Count 2: Arson – Superior Lumber Company** in violation of Title 18, United States Code, Section 844(i).  The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

   **Count 3: Attempted Arson – Jefferson Poplar Farm Main Office** in violation of Title 18, United States Code, Section 844(i). The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

   **Counts 4 through 15: Arson – Jefferson Poplar Farm Vehicle Shop, Shop & Office, and 10 vehicles** in violation of Title 18, United States Code, Section 844(i). The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee

assessment.

Defendant agrees to pay the fee assessment applicable to each of the above counts by the time of entry of guilty plea or explain to the court why this cannot be done.

Defendant will pay mandatory restitution as ordered by the court.

3.  **Factual Basis**:  The factual basis for each count is attached hereto and by this reference incorporated herein as Attachment 1, which defendant agrees the USAO can prove beyond a reasonable doubt.

4.  **Dismissal/No Prosecution**:  The USAO will move to dismiss all remaining counts at the time of sentencing.  The USAO further agrees not to bring additional charges against defendant for offenses relating to arson, conspiracy, conspiracy to commit arson, or destruction of an energy facility in which defendant may have been involved directly or indirectly up to and including December 11, 2005, which took place in the District of Oregon.

5.  **Resolution of Sentencing Issues**: In addition to waiving the right to a jury trial on the issue of guilt, defendant knowingly and voluntarily agrees that sentencing issues in this case need not be alleged in a grand jury indictment, proven to a trial jury, or proven beyond a reasonable doubt.  Defendant also knowingly and voluntarily consents to judicial fact-finding and resolution of any and all sentencing issues.  Defendant and government agree that the guidelines calculations should be derived from the United States Sentencing Commission Guidelines Manual with effective date of November 1, 2000 and further that the combined offense level for defendant requires a 2 level increase pursuant to §3D1.4 of that manual.  The defendant and government understand and agree that the court will consider 18 U.S.C. §3553(a) in determining the appropriate sentence in this case.

6.  **Guideline Enhancement**: The USAO will recommend the terrorism guideline enhancement found in U.S.S.G. §3A1.4 because the felony offenses either involved or were intended to promote a federal crime of terrorism.

7.  **Acceptance**:  The USAO agrees to recommend a 3 level reduction for acceptance of responsibility if defendant's offense level is 16 or greater; otherwise a 2 level reduction applies pursuant to U.S.S.G. §3E1.1.  The USAO reserves the right to change or omit this recommendation if defendant, between plea and sentencing, commits any new or additional violation of law, obstructs or attempts to obstruct justice or acts inconsistently with acceptance of responsibility.

8.  **Mitigating Role**: The USAO will recommend that defendant receive a 2 level decrease for her role as minor participant in the offense under the provisions of U.S.S.G. §3B1.2(b).

9. **USAO Sentence Recommendation**: The sentence to be recommended by the government in this case is based on the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide a just and fair sentence for this defendant in relation to and in comparison with all of the defendant's co-conspirators.

10. **Waiver of Appeal/Post-Conviction Relief**: Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds unless the sentence imposed exceeds the statutory maximum, the court imposes an upward departure pursuant to Part 5K of the Sentencing Guidelines, or the court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline range. Should defendant seek an appeal, despite this waiver of that right, the USAO may take any position on any issue on appeal. Defendant also waives the right to file a motion pursuant to 28 U.S.C. § 2255 to set aside the conviction and sentence, except on grounds of ineffective assistance of counsel, newly discovered evidence, or a retroactive change in the applicable guidelines or statute.

11. **Court Not Bound**: The court is not bound by the recommendations of the parties or of the Presentence Report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the court does not follow the agreements or recommendations herein.

12. **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and the court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

13. **Breach of Plea Agreement**: If defendant breaches the terms of this agreement, or commits any new violations of law between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea.

14. **REDACTED**

15. **REDACTED**

16. **Total Agreement**: This letter states the full extent of the agreement between the parties. There are no other promises or agreements, express or implied. If defendant

accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

Sincerely,

KARIN J. IMMERGUT
United States Attorney

KIRK A. ENGDALL
Assistant U.S. Attorney

I have read this agreement carefully and reviewed every part of it with my attorney. I understand the agreement and voluntarily agree to it. I am satisfied with the legal assistance provided to me by my attorney.

_____
Date

_____
SUZANNE NICHOLE SAVOIE
Defendant

I represent defendant as legal counsel. I have carefully reviewed every part of this agreement with defendant. To my knowledge defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Date

_____
JOHN KOLEGO
Attorney for Defendant

## ATTACHMENT 1

United States vs. Suzanne Savoie

### Count 1: Conspiracy to Commit Arson and Conspiracy to Commit an Offense Against the United States:

Beginning in October 1996 and continuing through October, 2001, in the District of Oregon and elsewhere, Josephine Sunshine Overaker, Kevin Tubbs, Stanislas Gregory Meyerhoff, Daniel Gerard McGowan, Joseph Dibee, Rebecca Rubin, Chelsea Dawn Gerlach, Kendall Tankersley, Suzanne Savoie, Jonathan Christopher Mark Paul, Darren Todd Thurston, Nathan Fraser Block, Joyanna L. Zacher, Jacob Jeremiah Ferguson, Jennifer Lynn Kolar, William C. Rodgers and other persons, willfully and knowingly conspired and agreed to maliciously damage or destroy, or attempt to damage or destroy, by means of fire, buildings, vehicles and other personal and real property owned in whole or in part or possessed by, or leased to, the United States or any department or agency thereof, and or used in interstate commerce or in any activity affecting interstate commerce; and to knowingly and willfully damage and attempt to damage the property of an energy facility of the United States involved in the transmission of electricity.

The conspiracy was accomplished by the defendant and the others named above, when certain of the defendants and others joined together in a group they called the "Family." This "Family" was what is commonly known as a "cell" of groups and movements publicly named and described by certain of the defendants and others as the Earth Liberation Front (ELF), the Animal Liberation Front (ALF), and other names.

The primary purposes of the conspiracy were to influence and affect the conduct of government, commerce, private business and others in the civilian population by means of force, violence, sabotage, destruction of property, intimidation and coercion, and by similar means to retaliate against the conduct of government, commerce and private business. To achieve these purposes, some of the conspirators committed and attempted to commit acts potentially dangerous to human life and property that constituted violations of the criminal laws of the United States and of individual states.

Some of the defendants and others targeted for arson, buildings, vehicles and other real and personal property owned, possessed, and leased by the United States and its departments and agencies while others targeted for arson, buildings, vehicles and other real and personal property used in interstate commerce and in activities affecting interstate commerce; and still others targeted energy facilities of the United States for damage and destruction.

The defendant and others conducted and participated in meetings to plan arsons of the targeted sites. Several of these meetings were called "Book Club" meetings by the defendants and others and occurred at distant locations. The "Book Club" meetings covered subjects such as lock-picking, computer security, reconnaissance of targets,

and manufacture of timing devices to set off improvised incendiary devices.

Some of the defendants and others conducted research and surveillance of sites targeted for arson and discussed their actions among themselves by using code words, code names, and nicknames. The phrase "direct action" was used to include arsons and other acts of destruction.

In preparation for the actions, some of the conspirators designed and constructed destructive devices which functioned as incendiary devices to ignite fires and destroy the targets for arson and provided transportation to the locations of the arson targets.

During the course of the "direct actions" the defendant and others dressed in dark clothing, wore masks and gloves and otherwise disguised their appearance. Some of the conspirators acted as "lookouts" to ensure secrecy as the crimes were carried out, and some placed destructive devices and accelerants at sites targeted for arson and ignited or attempted to ignite the devices and accelerants.

In some of the arsons and attempted arsons, certain of the defendants and others painted messages on the walls of the targets, including "Earth Liberation Front," "ELF" and related names and statements concerning the purposes of the crimes.

After the arsons and attempted arsons, the defendants and others destroyed, buried, hid and otherwise disposed of physical evidence used in the commission of the crimes and thereafter publicized and promoted the results of the fires by means of written press releases and communiques which attributed the arsons to the Earth Liberation Front (ELF), the Animal Liberation Front (ALF) and related groups, and stated the purpose of the arsons.

Before, during and after the arsons, attempted arsons, and destruction of an energy facility, some of the defendants and others agreed among themselves never to reveal to law enforcement authorities or to anyone else outside "the Family" the identity of the conspirators and participants in the arsons and attempted arsons and agreed among themselves to conceal or destroy any evidence connecting them to the arsons and attempted arsons. Some of the defendants and others possessed and/or used false identification documents in order to conceal their true identities and after the arsons and attempted arsons, some of the defendants and others fled and secreted themselves in foreign countries in order to avoid detection and arrest by law enforcement authorities in the United States.

## Count 3: Arson – Superior Lumber Company

Prior to January 2, 2001, Suzanne Savoie participated in planning and preparation to commit arson at the Superior Lumber Company at Glendale, Oregon.

On or about January 2, 2001, at Glendale, Douglas County, District of Oregon,

defendants Suzanne Savoie, Stanislas Gregory Meyerhoff, Kevin Tubbs and Daniel Gerard McGowan and other persons unlawfully and willfully caused and aided, abetted, counseled, commanded, induced, and procured the malicious damaging and destroying, by means of fire and an explosive, of a building and other real and personal property used in interstate commerce and used in activities affecting interstate commerce, namely, a building and its contents located at Superior Lumber Company, 2695 Glendale Valley Road, Glendale, Oregon.

Suzanne Savoie and the others met at a set location in the city of Eugene, Oregon from where they then traveled in two separate vehicles to a predetermined staging area at a rest area located just north of the town of Glendale, Oregon, on Interstate 5. Upon arrival at the staging area, Suzanne Savoie and the others dressed in dark clothing, gloves, masks, shoes and hats to avoid being detected while committing the arson at the Superior Lumber Company.

Suzanne Savoie and the others put on their radio earpieces, completed a radio check and traveled in one van to the Superior Lumber Company building. Upon their arrival, Suzanne Savoie was dropped off at a phone booth near the Superior Lumber Company and served as a look out while others, positioned the "pick-up" vehicle and placed the time-delayed incendiary devices.

After the incendiary devices were placed, Suzanne Savoie was picked up along with the other co-conspirators and traveled back to the staging area at the Interstate 5 Northbound rest stop, just north of Glendale, Oregon.

Suzanne Savoie and the others changed their dark clothing and disposed of clothing as they traveled back to Eugene, Oregon.

The incendiary devices functioned and the Superior Lumber Company facility was destroyed by fire. The Superior Lumber Company building and other real and personal property were used in interstate commerce or in activities affecting interstate commerce.

On January 2, 2001, Suzanne Savoie and Daniel McGowan traveled to Portland, Oregon and prepared a communique claiming responsibility for the Superior Lumber Company Arson attributing the fire to the Earth Liberation Front (ELF). The communique was publicized by Craig Rosebraugh of the North American ELF Press Office.

### Counts 4 through 16: Attempted Arson and Arson– Jefferson Poplar Farm Main Office, Vehicle Shop, Shop & Office and 10 vehicles

Approximately 6 to 8 months prior to May 21, 2001, Suzanne Savoie, Daniel Gerard McGowan and others performed research regarding the James River Corporation's involvement in the genetic engineering of trees.

At a time prior to May 21, 2001, defendants Suzanne Savoie, Stanislas Gregory Meyerhoff, and Chelsea Dawn Gerlach performed a reconnaissance for the arson at the Jefferson Poplar Farm which they believed was associated with the James River Corporation.

At a time prior to May 21, 2001, Suzanne Savoie traveled from her residence in Southern Oregon to the residence of co-conspirator Nathan Fraser Block in Olympia, Washington. Once there, Suzanne Savoie, Nathan Fraser Block, Joyanna L. Zacher, Daniel Gerard McGowan and Stanislas Gregory Meyerhoff and others discussed plans for committing the arson at the Jefferson Poplar Farms at Clatskanie, Oregon.

On May 20, 2001, Suzanne Savoie, Nathan Fraser Block, Joyanna L. Zacher, Daniel Gerard McGowan and Stanislas Gregory Meyerhoff traveled in vehicles to a staging area just north of the Oregon - Washington border.

At the staging area, the co-conspirators dressed in dark clothing to avoid being detected while committing the arson at the Jefferson Poplar Farm. Once they were ready, they all drove to the Jefferson Poplar Farm. Suzanne Savoie was the driver of the vehicle.

Once at Jefferson Poplar Farm, Suzanne Savoie dropped off the co-conspirators at different locations at the poplar farm so they could place the incendiary devices in numerous sites in and around the Jefferson Poplar Farm buildings. One of the incendiary devices was placed adjacent to a large propane gas tank.

Some of the co-conspirators spray-painted graffiti at the site attributing the action to the Earth Liberation Front (ELF).

Suzanne Savoie monitored a radio scanner to ensure the security of the other co-conspirators while they were placing the incendiary devices.

After being informed by two-way radios that all the incendiary devices had been properly placed by her co-conspirators, Suzanne Savoie returned to pick up the others. Suzanne Savoie then drove everyone back to the staging area to undress, dispose of their clothing and get the second vehicle. Suzanne Savoie then returned to Olympia, Washington.

The time-delayed incendiary devices which were placed at the Main Office building failed to function. The time-delayed incendiary devices placed at the Vehicle Shop and the Shop & Office buildings did function and resulted in a fire which destroyed those two buildings as well as ten vehicles sheltered inside those buildings.

On or about June 1, 2001, the defendants in the Jefferson Poplar Farm arson issued a communique attributing the fire to the Earth Liberation Front (ELF). The communique was publicized by Craig Rosebraugh of the North American ELF Press Office.

The Superior Lumber Company building at Glendale, Douglas County, the District of Oregon, which destruction by fire occurred on or about January 2, 2001 and the Jefferson Poplar Farm arson which occurred on or about May 21, 2001 at Clatskanie, Columbia County, the District of Oregon, were buildings and other real and personal property used in interstate commerce and were used in activities affecting interstate commerce.